VANMETER, J., CONCURRING IN PART AND DISSENTING IN PART:
I concur with so much of the majority opinion as analyzes the facts of this case and directs that in future cases, jury instructions should reflect concepts of comparative fault. That said, I respectfully dissent with so much of the majority opinion *362 as reverses and remands this case for a new trial since a review of the record and trial proceedings discloses that Maupin failed to present her theory of the case to the trial court in the form of jury instructions such she should not now be heard to complain. CR [1] 51(3).
The earliest Kentucky statute addressing damages caused by dogs appears to have been passed in 1851 and has gone through many reenactments, amendments, etc.[2] These statutes consistently appear to impose what we would consider strict liability for damages caused by dogs.[3] The purpose, "in part, was intended to obviate the difficulty which existed at common law of showing the owner's knowledge of the vicious propensities of the dog in an action for damages." Bush v. Wathen , 104 Ky. 548, 557, 47 S.W. 599, 601 (1898). As a result, our courts, including the majority opinion in this case, have struggled to reconcile the terms of the statute with situations in which a dog causes injury, yet the case's facts seem to reach an unfair result because the dog owner had done all that a prudent dog owner should do to prevent injury.
In Bush , our predecessor court, interpreting Ky. Stat. § 68, reversed a verdict in favor of a plaintiff bitten by a dog at a dog show. Although the explicit statutory exceptions to liability did not apply, i.e , the plaintiff was neither on the dog owner's premises at night nor engaged in some unlawful act in the daytime, the court nevertheless held that principles of contributory negligence applied to injuries inflicted by animals. Id., 104 Ky. at 556, 47 S.W. at 601. The court remanded the case for a new trial for a jury to consider whether the plaintiff's contributory negligence in teasing the dog had contributed to the dog's attack. Id. , 104 Ky. at 558, 47 S.W. at 602.
Virtually every Kentucky opinion since Bush, notwithstanding the apparent legislative *363 mandate of imposing strict liability on dog owners, has recognized exceptions to liability. See, e.g., Johnson v. Brown , 450 S.W.2d 495 (Ky. 1970) ; Dykes v. Alexander , 411 S.W.2d 47 (Ky. 1967) (five-year-old child bitten by dog while trespassing in dog owner's fenced-in backyard); Wooldridge v. White, 105 Ky. 247, 48 S.W. 1081 (1899). Dykes is instructive for the instant case because, although it was decided while Kentucky adhered to the concept of contributory negligence, the court explicitly stated that a child under seven cannot be contributorily negligent. 411 S.W.2d at 49. The court thus analyzed the case under precepts of premises liability and whether the child was an invitee, licensee or trespasser, and stated the prevailing rule in Kentucky, that
[a] person who is on the premises of another, not as an invitee or a licensee or there under an implied invitation, can only be a trespasser. Where a person is on the land of another without either their knowledge or consent and is a trespasser, then the landowner owes him no duty except to exercise ordinary care to avoid injury to him after his position of peril is discovered, and he must refrain from inflicting or exposing him to wanton or wilful injury or setting a trap for him.
Id. (citing Bradford v. Clifton , 379 S.W.2d 249, 250-51 (Ky. 1964) ).
With that historical perspective, in this case, Maupin tendered to the trial court and advocated for jury instructions that imposed strict liability on Tankersley if the jury found that that he owned the dogs that attacked Maupin. At no point did Maupin argue for jury instructions containing comparative negligence principles. And while the majority criticizes the current verdict and sets forth a rule for instructions that they should reflect comparative fault principles, Tankersley's tendered instructions did, in fact, include comparative fault principles. Tankersley argued to the trial court that it should instruct according to the rule set out in Johnson, Dykes, and Carmical v. Bullock , 251 S.W.3d 324, 326 (Ky. App. 2007).[4]
In my view, the majority opinion impermissibly reverses this verdict on grounds not raised in the trial court, and does so notwithstanding the clear direction of CR 51(3) :
No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.
In Scudamore v. Horton, 426 S.W.2d 142, 146 (Ky. 1968), this court posed the question as "whether [appellants] can assign one reason for objecting to an instruction in the trial court and a different one on this appeal," and held "[o]bviously, *364 CR 51 condemns such a practice, and, in consequence, we must hold they cannot now be heard on these matters." (internal quotation omitted).
More recently, this Court delineated three circumstances as to when a tendered instruction will not fairly and adequately present the party's position as to an allegation of instructional error:
(1) the omitted language or instruction was not contained in the instruction tendered to the trial court; i.e., when the allegation of error was not presented to the trial court at all ;
(2) the minor differences between the language of the tendered instruction and the instruction given by the trial court would not call the trial court's attention to the alleged error; or
(3) the tendered instruction itself was otherwise erroneous or incomplete
Sand Hill Energy, Inc. v. Smith , 142 S.W.3d 153, 163-64 (Ky. 2004). Maupin's tendered instructions reflected her position that a dog owner is strictly liable for damages upon proof of dog ownership. Thus, her instructions violate both (1) and (3) above-the allegation of error was not presented to the trial court and her tendered instructions were erroneous. For this reason, the trial court's verdict should be affirmed.
I would affirm the Court of Appeals and the Jackson Circuit Court in all respects.
Wright, J. joins.

Kentucky Rules of Civil Procedure.

An act relating to Horses, Cattle and Dogs, stated "[s]heep-killing, ravenous, or mischievous dogs shall not be permitted to go outside of the inclosure [sic] of the owner or keeper[,]" 1851 Ky. Acts ch. LV, art. IV, § 1, and its final section provided "[a]ny person injured by the horse, cattle or dog of another, such as described in this chapter, shall have redress by civil action." Id. , art. V, § 1.
In the 1873 General Statutes of Kentucky, the statute providing for liability for injury caused by dogs stated:
Every person owning, having, or keeping any dog, shall be liable to the party injured for all damages done by such dog: Provided , No recovery shall be had in the case the person injured is, at the time, upon the premises of the owner of the dog after night, or engaged in some unlawful act in the day-time[.]
Ky. Gen. Stat. ch. 9, § 10. In 1865, the General Assembly had enacted the first clause of this statute, which read, "[t]hat every person owning, having, or keeping airy dog shall be liable to the party injured for all damages done by such dog[.]" 1865 Ky. Acts ch. 755, § 3. In 1872, the statute was modified to add the qualifier that "Provided, No recovery shall be had in the case the person injured is, at the time, upon the premises of the owner of the dog after night, or engaged in some unlawful act in the day-time." 1872 Ky. Acts.
In 1893, Ky. Gen. Stat. ch. 9, § 10, was readopted practically verbatim, 1893 Ky. Acts ch. 190, § 26, and re-codified in 1894 as Ky. Stat. § 68 (later § 68a).

At common law, a dog owner was not liable absent knowledge of the dog's vicious propensities, i.e , the "one free bite" rule. See, e.g., Murray v. Young , 75 Ky. (12 Bush) 337, 341 (1876) (citing Cockerham v. Nixon , 33 N.C. 269, 270 (1850) for the proposition that an animal's viciousness may be proven by a single act known by the owner). The facts in Murray concerned damages to sheep done by dogs. The Court of Appeals apparently viewed the final section of the 1873 statute to apply only to injury to persons, and not to livestock. Lewis N. Dembitz, Kentucky Jurisprudence (Louisville: John P. Morton & CO., 1890), 619-20.

In Carmical, the instructions given were, as follows:
The Defendant, ... is liable for damages caused by his dog to the Plaintiff, ... if he had reason to believe that [the Plaintiff] would be in the vicinity of the animal. He further had a duty to exercise ordinary care to control his dog for the safety of others.
You will find for the Plaintiff, ... under this Instruction if you are satisfied from the evidence that:
(A) The Defendant, ... had reason to believe that the Plaintiff would be in the vicinity of his dog; OR
(B) The Defendant, ... failed to exercise ordinary care to control his dog for the safety of others, and that such failure was a substantial factor in causing the Plaintiff's injuries.
Otherwise, you will find for [the Defendant].